946 F.2d 571
 Bobby Ray FRETWELL, Appellee,
v.
A.L. LOCKHART, Director, Arkansas Department of Corrections,
Appellant.
Bobby Ray FRETWELL, Appellant,
v.
A.L. LOCKHART, Director, Arkansas Department of Corrections, Appellee.
 Nos. 90-2105, 90-2315.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 7, 1991.
Decided Sept. 23, 1991.
 
 Clint Miller, Asst. Atty. Gen., Little Rock, Ark., for appellant.
 Richard R. Medlock, Little Rock, Ark., for appellee.
 Before LAY, Chief Judge, and MAGILL and LOKEN, Circuit Judges.
 MAGILL, Circuit Judge.
 
 
 1
 A.L. Lockhart, Director of the Arkansas Department of Correction, appeals the district court's grant of habeas corpus relief to Bobby Ray Fretwell on the ground that Fretwell had received ineffective assistance of counsel at his capital felony murder trial. Fretwell cross-appeals, raising other claims of ineffective assistance of counsel. We affirm the district court's decision in part and remand for further proceedings consistent with this opinion.
 
 I.
 
 2
 In August 1985, Fretwell was tried and convicted of capital felony murder in Searcy County, Arkansas. The jury found that Fretwell had murdered Sherman Sullins in the course of a robbery.[1] At a separate sentencing hearing,[2] the state argued that the evidence admitted during the guilt phase of Fretwell's trial established the following two aggravating circumstances: that the capital felony was committed for the purpose of avoiding or preventing a lawful arrest or affecting an escape from custody; and that the capital felony was committed for purposes of pecuniary gain. Fretwell's attorney argued that these allegations did not constitute valid aggravating circumstances and that Fretwell's difficult and disadvantaged childhood constituted a mitigating factor. The trial court instructed the jury on the two aggravating circumstances requested by the state. Fretwell's attorney did not object. The trial court also instructed the jury on the one mitigating circumstance raised by Fretwell's attorney. The jury found that only the pecuniary gain aggravating circumstance was present and that there were no mitigating circumstances. Based on these findings, the jury concluded that Fretwell's punishment should be death.
 
 
 3
 Fretwell's conviction and sentence were affirmed on direct appeal in 1986 by the Arkansas Supreme Court. Fretwell v. State, 289 Ark. 91, 708 S.W.2d 630 (1986). Fretwell's collateral attacks in state courts on his conviction and sentence were unsuccessful. Fretwell then filed a habeas petition in federal district court, claiming that the trial court erred in refusing to set aside the jury's verdict as being contrary to the evidence and that he received ineffective assistance of counsel. Fretwell argued that his counsel was ineffective because counsel failed to object to the aggravating circumstances jury instructions; because counsel failed to prepare and present evidence at the suppression hearing on Fretwell's confession; because counsel argued for an erroneously-worded jury instruction on the lesser included offense of first degree murder; and because counsel failed to investigate or prepare for the sentencing phase. The district court held that Fretwell was procedurally barred from raising his first claim and rejected two of the ineffective assistance of counsel claims, but granted relief on the claim that trial counsel was ineffective because he failed to object to the jury instructions on aggravating circumstances.[3] The district court noted that seven months before Fretwell's trial, the Eighth Circuit had held that the Constitution is violated when a trial court uses pecuniary gain as an aggravating circumstance in robbery/murder cases because such double counting does not genuinely narrow the class of persons eligible for the death penalty. See Collins v. Lockhart, 754 F.2d 258, 263-64 (8th Cir.1985). The district court then held that under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), Fretwell's counsel was ineffective. First, the district court held that Fretwell's counsel violated his duty to be aware of all law relevant to Fretwell's death penalty case. It further held that the error was prejudicial under Strickland because the jury found only one aggravating circumstance, that Fretwell had committed the murder for pecuniary gain. The district court stated that it was confident that, had Fretwell's counsel objected, the trial court would have followed Collins and thus would not have issued the pecuniary gain instruction. Consequently, the jury would have found no aggravating circumstances and it would have had no choice but to sentence Fretwell to life imprisonment without parole. Having held that Fretwell's trial counsel was ineffective, the district court granted habeas relief, conditionally vacating Fretwell's death sentence. The district court gave the State of Arkansas the option to conduct another sentencing hearing within ninety days. If no such hearing were held, the district court ordered that Fretwell's sentence be permanently reduced to life imprisonment without the possibility of parole. Lockhart appeals this decision and has received a temporary stay of the tolling of the ninety-day period while we resolve this appeal. Fretwell cross-appeals the district court's dismissal of his other ineffectiveness claims, requesting that his sentence be unconditionally reduced to life imprisonment without parole, or in the alternative that he be resentenced under the law that was in effect at the time of his first trial.
 
 II.
 
 4
 Lockhart argues on appeal that Fretwell was not denied effective assistance of counsel by his counsel's failure to make an objection based on Collins to the pecuniary gain instruction. Lockhart argues that even if Fretwell's attorney had objected to the pecuniary gain instruction, the trial court would probably have overruled the objection because Collins was a "lawless" decision. Lockhart contends that Collins was clearly inconsistent with the Supreme Court's decisions in Zant v. Stephens, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983), and Jurek v. Texas, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), and therefore lacked any precedential value. As evidence of the "lawless" nature of the Collins decision, Lockhart cites a later Supreme Court decision permitting the use of an element of a capital crime as an aggravating circumstance in the sentencing phase, see Lowenfield v. Phelps, 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988), and this court's subsequent decision to overrule Collins, see Perry v. Lockhart, 871 F.2d 1384 (8th Cir.1989). Fretwell argues that the trial court would have sustained a Collins objection had Fretwell's counsel raised the issue because Collins was good law at the time of his trial.
 
 
 5
 Since all the claims Fretwell raises on appeal involve his right to effective assistance of counsel, we begin our analysis with the standard set by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under Strickland, an ineffective assistance of counsel claim will succeed only if (1) counsel's performance was deficient, and (2) counsel's deficient performance prejudiced petitioner's defense. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064. The district court found that the performance of Fretwell's trial counsel was deficient because he was ignorant of Collins. Lockhart does not challenge this finding, nor do we. Therefore, the only question is whether this deficient performance prejudiced Fretwell's defense.
 
 
 6
 Lockhart claims that, at the time of Fretwell's trial, the Supreme Court case law would have led the trial court to overrule a Collins objection. We disagree. In Jurek, the Supreme Court considered whether the legislature could narrow the class of individuals eligible for the death penalty at the guilt phase instead of at the sentencing phase. Jurek involved a capital sentencing scheme that requires a court to conduct a separate sentencing proceeding after a defendant is convicted of a capital offense. Jurek, 428 U.S. at 267, 96 S.Ct. at 2954. During this punishment phase, both parties can present evidence and make arguments regarding the appropriate sentence. At the conclusion of the sentencing proceeding, the trial court must present the jury with questions[4] which, if answered in the affirmative, mandate the imposition of the death penalty. Id. The Supreme Court reasoned that these questions allow the jury to consider mitigating circumstances that might militate against imposing the death penalty. Since the Texas capital sentencing scheme requires the jury to find at least one aggravating circumstance in the guilt phase and allows the jury to consider mitigating circumstances in the sentencing phase, the Supreme Court held that the scheme was constitutional.[5] Id. at 276, 96 S.Ct. at 2958.
 
 
 7
 The question before the Court in Jurek was whether the state legislature could narrow the class of individuals eligible for the death penalty at the guilt phase by narrowing its definition of capital murder. The Court held that such narrowing is permissible. Id. at 276, 96 S.Ct. at 2958. Lockhart argues that Jurek permitted Arkansas to accomplish the requisite narrowing by including the aggravating circumstance of pecuniary gain at the guilt phase. He argues that the statutory requirement that the jury find at least one aggravating circumstance in the sentencing phase is superfluous and does not obviate the narrowing that was already performed in the guilt phase. Lockhart's reliance upon Jurek is misplaced. The Court in Jurek did not address the question of whether a state can use the same aggravating circumstance in both the guilt phase and the sentencing phase. That question was resolved by the Supreme Court in Lowenfield, which was decided more than three years after Fretwell's trial. See Lowenfield, 484 U.S. at 246, 108 S.Ct. at 555. Furthermore, the capital sentencing scheme reviewed by the Court in Jurek was significantly different from Arkansas' capital sentencing scheme. Arkansas requires that the jury balance aggravating and mitigating circumstances in deciding whether the death penalty is appropriate. In Jurek, the Court viewed the sentencing phase questions only as an opportunity for the jury to consider mitigating circumstances. Since the Supreme Court reviews the constitutionality of a particular death sentence in the specific context of the state's capital sentencing scheme, see Zant v. Stephens, 462 U.S. at 890, 103 S.Ct. at 2749, Jurek does not make a definitive statement about Arkansas' capital sentencing scheme.
 
 
 8
 In Zant v. Stephens, another case cited by Lockhart to show that Collins was lawless when it was decided, the Supreme Court held that a subsequent invalidation[6] of an aggravating circumstance would not justify reversal of the defendant's sentence if there were other valid aggravating circumstances, where the capital sentencing scheme required that one or more aggravating circumstances be found. 462 U.S. at 890, 103 S.Ct. at 2749. Lockhart argues that Zant reiterates the Supreme Court's ruling in Jurek, which allows states to perform the requisite constitutional narrowing during the guilt phase of a capital felony. Apparently, Lockhart is arguing that even if the sentencing phase finding of an aggravating circumstance is invalidated, the death penalty sentence must stand because the jury has already found the aggravating circumstance of pecuniary gain at the guilt phase. However, in Zant, the Court reiterated the importance of considering the capital sentencing scheme in death penalty decisions, and specifically limited its holding by stating:
 
 
 9
 [W]e do not express any opinion concerning the possible significance of a holding that a particular aggravating circumstance is "invalid" under a statutory scheme in which the judge or jury is specifically instructed to weigh statutory aggravating and mitigating circumstances in exercising its discretion whether to impose the death penalty.
 
 
 10
 Zant, 462 U.S. at 890, 103 S.Ct. at 2750. Therefore, since the Arkansas capital sentencing scheme requires the jury to balance aggravating and mitigating circumstances, Zant did not preclude the result in Collins.
 
 
 11
 Nor does the fact that we have interpreted the Supreme Court's decision in Lowenfield v. Phelps, 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988), as overruling Collins, see Perry, 871 F.2d at 1393, support Lockhart's claim that the Fretwell trial court would have ignored a Collins objection. First, as Lockhart acknowledges, both Lowenfield and Perry were decided more than three years after Fretwell's trial and consequently do not support his claim that Collins was "lawless." Second, Lockhart's claim that Lowenfield's reasoning applies to the Arkansas sentencing scheme ignores the significant difference between the Arkansas capital sentencing scheme and the Lowenfield scheme.[7] In Lowenfield, the Louisiana capital sentencing scheme defined the crime of capital murder to include aggravating circumstances. The scheme also required the jury to find at least one aggravating circumstance at the sentencing phase before the jury could impose the death penalty. If the jury found at least one aggravating circumstance, then the Louisiana scheme directed the jury to consider any mitigating circumstances before imposing the death penalty. The Court held that Louisiana's capital sentencing scheme was constitutional, even though the scheme allowed the jury to use the same aggravating circumstance of pecuniary gain at both the guilt phase and the sentencing phase. Lowenfield, 484 U.S. at 246, 108 S.Ct. at 555. The Court stated that the use of aggravating circumstances was "a means of genuinely narrowing the class of death-eligible persons and thereby channeling the jury's discretion" and that Jurek permitted this narrowing to take place at either the guilt phase or the sentencing phase. Id. at 244-45, 108 S.Ct. at 554-55. The Court concluded that Louisiana performed the requisite narrowing at the guilt phase. Therefore, since the narrowing had already occurred, the requirement that a jury find at least one aggravating circumstance at the sentencing phase was superfluous and did not violate the Constitution. Id. at 246, 108 S.Ct. at 555. The Louisiana sentencing scheme differs significantly from the Arkansas scheme in that Arkansas directs the jury to weigh aggravating circumstances against mitigating circumstances before imposing the death penalty; Louisiana merely requires that the jury find at least one aggravating circumstance and then consider mitigating circumstances. See Zant v. Stephens, 462 U.S. at 890, 103 S.Ct. at 2749 (specifically limiting holding to exclude statutory schemes that require the sentencer to weigh aggravating and mitigating circumstances).
 
 
 12
 While the Supreme Court has not required states to adopt any particular capital sentencing scheme, Spaziano v. Florida, 468 U.S. 447, 464, 104 S.Ct. 3154, 3164, 82 L.Ed.2d 340 (1984), the Court places great importance on the specifics of a state's sentencing scheme when reviewing the constitutionality of a death sentence. See Zant v. Stephens, 462 U.S. at 874-75, 103 S.Ct. at 2741-42 (quoting Gregg v. Georgia, 428 U.S. 153, 195, 96 S.Ct. 2909, 2935, 49 L.Ed.2d 859 (1976)). Therefore, Lockhart's claim that Collins was lawless requires us to pay close attention to the sentencing schemes reviewed in the specific cases. Jurek involved a capital sentencing scheme in which the constitutional narrowing of the class of defendants eligible for the death penalty occurred at the guilt phase, in the form of a narrowly defined capital murder statute. The jury was then allowed to consider mitigating circumstances in a separate sentencing phase. In Zant, the court reviewed a death sentence in the context of a capital sentencing scheme that accomplished the constitutional narrowing at the sentencing phase. This scheme required the jury to find one or more statutory aggravating circumstances before a defendant was eligible for the death penalty. Only if the jury found one or more statutory aggravating circumstances was it to consider any mitigating circumstances. After considering the mitigating circumstances, the jury was then required to decide whether to impose the death penalty. The capital sentencing scheme in Lowenfield was a hybrid of the Jurek and Zant schemes. The Lowenfield scheme performed the constitutional narrowing at the guilt phase, like the Jurek scheme, by including aggravating circumstances in the statutory definition of capital murder. However, the Lowenfield scheme also required the jury to find at least one aggravating circumstance at the sentencing phase. Since the jury had already found one aggravating circumstance at the guilt phase, the sentencing phase aggravating circumstance requirement would always be met. After meeting the aggravating circumstance requirement, the jury was then directed to consider any mitigating circumstances before deciding whether to impose the death penalty. The Arkansas capital sentencing scheme significantly differs from the schemes in Jurek, Zant, and Lowenfield because it requires the jury to weigh aggravating circumstances against mitigating circumstances in the sentencing phase. Because of this difference and because of the analytical complexity of the issues involved, we reject Lockhart's claim that the trial court would have employed the Lowenfield reasoning to a Collins objection and thereby concluding that Collins was lawless.[8]
 
 
 13
 Having rejected Lockhart's claim that Collins was lawless at the time of Fretwell's trial, we now turn to whether a state trial court would have sustained a Collins objection to the instruction on pecuniary gain as an aggravating circumstance. Since we have already determined that the precedent that existed at the time of Fretwell's trial was not clearly inconsistent with Collins and since state courts are bound by the Supremacy Clause to obey federal constitutional law, we conclude that a reasonable state trial court would have sustained an objection based on Collins had Fretwell's attorney made one. Therefore, the district court correctly found that Fretwell's sixth amendment right to effective assistance of counsel was violated.
 
 
 14
 The situation in Nix v. Whiteside, 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986), relied on by the dissent, was totally different than in the present case. In Nix, the defendant was attempting to subvert the judicial process by lying under oath. The attempted perjury in that case bears no analogy to Fretwell's entitlement to rely on a case that was good law at the time he would have used it. The concurrence in Kimmelman v. Morrison, 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986), also relied upon by the dissent, argues that the court must grant relief only when the "fundamental fairness of the trial" was affected by trial error. Perhaps determining fundamental fairness is a subjective analysis, but this court already has extended the benefit of Collins to several prisoners because it would be an "extreme inequity" to do otherwise. See Woodard v. Sargent, 806 F.2d 153 (8th Cir.1986); Ruiz v. Lockhart, 806 F.2d 158 (8th Cir.1986). In our view, fundamental unfairness exists when a prisoner receives a death sentence rather than life imprisonment solely because of his attorney's error.
 
 
 15
 Our decision in Perry does not alter our approach. The Perry case involved a direct constitutional challenge to the sentencing scheme, not an ineffectiveness of counsel claim. The Kimmelman Court acknowledged that ineffective assistance of counsel claims are viable in habeas even if the underlying substantive violation does not directly relate to the defendant's guilt or innocence. 477 U.S. at 379-80, 106 S.Ct. at 2585-86. Because Fretwell can show prejudice, defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984), he is entitled to relief.
 
 
 16
 The district court's order granting habeas relief invalidated Fretwell's original sentence. This order allowed the state to resentence Fretwell within ninety days; however, if the state fails to hold such a hearing, Fretwell's sentence will be reduced to life imprisonment without parole. We do not believe that a new sentencing hearing should be held. As Fretwell points out in his brief, to resentence him under current law would perpetuate the prejudice caused by the original sixth amendment violation. The dissent argues that applying Collins, as should have been done originally, conflicts with our decision in Perry, where, in overruling Collins, we applied Lowenfield retroactively and reinstated the defendant's death sentence. This argument overlooks the fact that the defendant in Perry was sentenced to death under the Arkansas sentencing scheme at least three years before Collins was decided. See Perry v. State, 277 Ark. 357, 642 S.W.2d 865 (1982). Thus, he was not entitled to the benefits of an undisturbed, retroactively applied Collins after it had been overruled. Fretwell, however, was sentenced while Collins was good law, and was entitled to its benefits at the time of his sentencing.
 
 
 17
 The only remedy that will remove the prejudice he suffered is the reduction of his sentence to life without parole. Therefore, we remand this case to the district court to modify its order to reduce unconditionally Fretwell's sentence to life imprisonment without parole. Since Fretwell's claims of ineffective assistance of counsel at the guilt phase are without merit, we affirm the district court's denial of relief on those claims.
 
 III.
 
 18
 For the foregoing reasons, we affirm, in part, the district court's grant of habeas relief and remand for proceedings consistent with this opinion.
 
 LOKEN, Circuit Judge, dissenting:
 
 19
 I respectfully dissent for two reasons. First, the majority holds that Fretwell received constitutionally ineffective assistance of counsel because trial counsel failed to object to an aggravating circumstances instruction that was proper under Lowenfield v. Phelps, 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988). I conclude that this ineffective assistance claim cannot satisfy the prejudice requirement of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Second, the majority holds that Arkansas must resentence Fretwell to life imprisonment. I conclude that this remedy exceeds the authority of a federal habeas court and conflicts with our prior decision in Perry v. Lockhart, 871 F.2d 1384 (8th Cir.), cert. denied, 493 U.S. 959, 110 S.Ct. 378, 107 L.Ed.2d 363 (1989).
 
 I.
 
 20
 "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686, 104 S.Ct. at 2064. "The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding." Id. at 691-692, 104 S.Ct. at 2066-2067. With this, the Supreme Court laid the foundation for analyzing claims of ineffective assistance of counsel. The Court then enunciated its now-familiar ineffectiveness and prejudice test for determining whether counsel's assistance was so defective as to require reversal of a death sentence.
 
 
 21
 Proof of prejudice is an essential prerequisite to relief under Strickland. When dealing with issues relating to counsel's performance during a trial or sentencing hearing, proof of prejudice normally and quite logically focuses on the time in question. The prejudice test adopted in Strickland --"reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," 466 U.S. at 694, 104 S.Ct. at 2068--reflects that focus. In this case, the majority limits its analysis entirely to that focus and concludes that Fretwell was prejudiced because his sentence probably would have been different had his counsel made a Collins objection.
 
 
 22
 However, there is something more to Strickland's concept of constitutional prejudice. That something more is best illustrated by Nix v. Whiteside, 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986), a case in which trial counsel persuaded the defendant not to commit perjury by threatening to expose the perjury if he did. The defendant testified truthfully, was convicted, and on appeal claimed ineffective assistance. As two commentators have noted, "All nine Justices concluded that, even if defense counsel acted incompetently and even if that action had the requisite effect on outcome, counsel's behavior still would not have been prejudicial. The reason was apparently that perjury is criminal conduct that detracts from the reliability of judgments." Jeffries & Stuntz, Ineffective Assistance and Procedural Default in Federal Habeas Corpus, 57 U.Chi.L.Rev. 679, 686 (1990). Justice Blackmun, in a concurring opinion for four Justices, put it more bluntly: "Since Whiteside was deprived of neither a fair trial nor any of the specific constitutional rights designed to guarantee a fair trial, he has suffered no prejudice." 475 U.S. at 186-187, 106 S.Ct. at 1004-1005.
 
 
 23
 This aspect of the prejudice analysis was more fully articulated in Justice Powell's concurring opinion in Kimmelman v. Morrison, 477 U.S. 365, 392, 106 S.Ct. 2574, 2591, 91 L.Ed.2d 305 (1986). Morrison was convicted of rape after his attorney failed to object to admission of an illegally seized bedsheet. The Court held that Stone v. Powell, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) did not bar this ineffective assistance claim. However, Justice Powell wrote separately to clarify that the Court in remanding was not resolving a Strickland prejudice issue that had not been argued:
 
 
 24
 [T]he admission of illegally seized but reliable evidence does not lead to an unjust or fundamentally unfair verdict.... Thus, the harm suffered by respondent in this case is not the denial of a fair and reliable adjudication of his guilt, but rather the absence of a windfall. Because the fundamental fairness of the trial is not affected, our reasoning in Strickland strongly suggests that such harm does not amount to prejudicial ineffective assistance of counsel under the Sixth Amendment.... [I]t would shake th[e] right [to effective assistance of counsel] loose from its constitutional moorings to hold that the Sixth Amendment protects criminal defendants against errors that merely deny those defendants a windfall.
 
 
 25
 477 U.S. at 396-397, 106 S.Ct. at 2954-2955. See also Woods v. Whitley, 933 F.2d 321, 324 (5th Cir.1991).
 
 
 26
 The majority and the district court have granted Fretwell just such a windfall. Lowenfield established that Fretwell's sentencing jury was given instructions that did not violate his Eighth Amendment rights. Moreover, this court in Perry held that Lowenfield did not create a new rule of law and therefore must be applied retroactively. 871 F.2d at 1394. By focusing only on the probable effect of counsel's error at the time of Fretwell's sentencing, the majority misses the broader and more important point that his sentencing proceeding reached neither an unreliable nor an unfair result. Consequently, we are granting Fretwell a constitutional "windfall" that, as Justice Powell warned in Kimmelman, loosens the ineffective assistance inquiry from its Sixth Amendment moorings.
 
 
 27
 Like Justice Blackmun in Nix and Justice Powell in Kimmelman, I conclude that a federal court has no power to grant habeas relief to Fretwell, a state prisoner, unless ineffective assistance of counsel has deprived him of a fundamentally fair sentencing, or of a specific constitutional right designed to guarantee a fair sentencing. Lowenfield and Perry establish that Fretwell was deprived of neither. Accordingly, I would reverse the district court's grant of habeas corpus relief.
 
 II.
 
 28
 Having concluded, erroneously in my view, that Fretwell was denied effective assistance of counsel, the majority orders Arkansas to resentence him to life imprisonment without parole. I dissent from this extraordinary intrusion into the state's authority to conduct this criminal proceeding consistent with current constitutional principles.
 
 
 29
 Presumably the majority limits the state's resentencing options to life imprisonment on the assumption that Fretwell's sentencing jury would have sentenced him to life if not instructed that pecuniary gain could be an aggravating circumstance. Of course, this assumption is highly speculative.[1] But the remedy is more than speculative, it goes beyond that afforded when Collins was still the law. Indeed, two of the four Arkansas prisoners who were resentenced prior to Lowenfield because of a Collins error received the death penalty upon resentencing. See Perry, 871 F.2d at 1394 n. 7; Ruiz v. State, 299 Ark. 144, 772 S.W.2d 297 (1989).
 
 
 30
 More importantly, the majority's remedy conflicts with our prior decision in Perry, which overruled Collins. In Perry, we applied Lowenfield retroactively and reinstated the defendant's death penalty because he was not entitled to "the benefit of an undisturbed Collins...." Perry, 871 F.2d at 1394 n. 7. Thus, the majority's remedy, which goes beyond that of an "undisturbed Collins," is in clear conflict with Perry.
 
 
 31
 The proper remedy here should reflect three principles. First, Arkansas should be given an opportunity to resentence Fretwell; that has been the law since at least In re Bonner, 151 U.S. 242, 259-260, 14 S.Ct. 323, 326-327, 38 L.Ed. 149 (1894). Second, Arkansas should be permitted to seek the death penalty at that resentencing; otherwise, this court will be mandating a procedure in the name of Collins, an overruled case, that neither Collins nor the Constitution ever required. Because the first jury sentenced Fretwell to death, there is no Fifth Amendment double jeopardy bar if the state decides to seek that penalty at the resentencing. Compare Bullington v. Missouri, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981), with Lockhart v. Nelson, 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988).
 
 
 32
 Finally, I would hold that, because Lowenfield is now the law, Arkansas must be permitted to instruct the jury at Fretwell's resentencing that pecuniary gain is a potential aggravating circumstance. Although this result might be viewed as depriving Fretwell of the benefit of Collins, the law has changed, and it has been clear for nearly a century that procedural or evidentiary changes in the law may constitutionally be applied at a criminal defendant's second trial or resentencing. See Thompson v. Missouri, 171 U.S. 380, 18 S.Ct. 922, 43 L.Ed. 204 (1898) (evidence declared inadmissible at first trial may be admitted at second trial under new statute authorizing its admission), cited approvingly in Dobbert v. Florida, 432 U.S. 282, 293, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344 (1977).[2] In addition, the nature of the federal habeas corpus remedy compels this result, for it is surely beyond our habeas corpus powers to prohibit the state from conducting the resentencing proceeding in a manner wholly consistent with the Constitution. See 28 U.S.C. § 2254(a).
 
 
 
 [1]
 A more complete account of the trial can be found in Fretwell v. Lockhart, 739 F.Supp. 1334, 1334-36 (E.D.Ark.1990)
 
 
 [2]
 Arkansas has adopted a bifurcated capital sentencing scheme. First, the jury must find the defendant guilty of a capital crime. Ark.Stat.Ann. § 41-1501(1)(a) (Repl.1977) (presently codified at Ark.Code Ann. § 5-10-101(a)(1) (1987)). Then, after finding a defendant guilty, the court must hold a separate sentencing hearing to determine whether the defendant should receive the death penalty or life imprisonment without parole. At the sentencing hearing, the jury is specifically instructed to weigh aggravating circumstances against mitigating circumstances. If the jury finds no aggravating circumstances, then the jury does not reach the weighing stage and must impose a sentence of life imprisonment without parole. Arkansas defines an exhaustive list of aggravating circumstances and a nonexhaustive list of mitigating circumstances to be used by the jury in its death penalty decisions. Ark.Stat.Ann. § 41-1301 to 1303 (Repl.1977) (presently codified at Ark.Code Ann. § 5-4-602 to 604 (1987))
 
 
 [3]
 The district court did not address Fretwell's claim that his counsel failed to investigate or prepare for the penalty phase because it found that ineffectiveness of counsel was established by counsel's failure to object to the aggravating circumstances instructions
 
 
 [4]
 In Jurek, Texas law required that the jury answer "yes" to the following questions:
 (1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;
 (2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and
 (3) if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any by the deceased.
 Tex.Code Crim.Proc., art. 37.071(b) (Supp.1975-76).
 
 
 [5]
 The Supreme Court has held that the Constitution requires capital sentencing schemes to fulfill two requirements. First, the scheme must "genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder." Zant v. Stephens, 462 U.S. at 877, 103 S.Ct. at 2742. Second, the scheme "may not limit the sentencer's consideration of any relevant evidence that might lead it to decline to impose the death penalty." Criminal Procedure Project, 79 Geo.L.J. 1089, 1129-30 (citing Lockett v. Ohio, 438 U.S. 586, 604, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973 (1978) (plurality opinion); McCleskey v. Kemp, 481 U.S. 279, 304, 107 S.Ct. 1756, 1773, 95 L.Ed.2d 262 (1987); Sumner v. Shuman, 483 U.S. 66, 81-82, 107 S.Ct. 2716, 2725-2726, 97 L.Ed.2d 56 (1987); Hitchcock v. Dugger, 481 U.S. 393, 398-99, 107 S.Ct. 1821, 1824-25, 95 L.Ed.2d 347 (1987); Woodson v. North Carolina, 428 U.S. 280, 304, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976) (plurality opinion)). The use of aggravating circumstances satisfies the first requirement, Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) (per curiam), and the consideration of mitigating circumstances satisfies the second requirement, Lockett v. Ohio, 438 U.S. 586, 606-07, 98 S.Ct. 2954, 2965-66, 57 L.Ed.2d 973 (1978) (plurality opinion); Eddings v. Oklahoma, 455 U.S. 104, 110, 102 S.Ct. 869, 874, 71 L.Ed.2d 1 (1982)
 
 
 [6]
 The Court noted that an aggravating circumstance that was invalidated because it was constitutionally impermissible or totally irrelevant, e.g., the race, religion, or political affiliation of the defendant; or because the circumstance should militate in favor of a lesser penalty, e.g., defendant's mental illness, would require the death sentence to be set aside. Zant v. Stephens, 462 U.S. at 885, 103 S.Ct. at 2747
 
 
 [7]
 In fact, the Lowenfield scheme was more like the Zant scheme than it was like the Arkansas scheme in that the schemes in Lowenfield and Zant do not require the jury to weigh mitigating and aggravating circumstances, while the Arkansas scheme does
 
 
 [8]
 In Perry, we extended Lowenfield's holding to cover Arkansas' sentencing scheme. This fact alone does not render Collins lawless. There is no question that Collins was "good" law at least up until Lowenfield. The fact that we held Lowenfield to apply retroactively to the Arkansas scheme, see Perry, 871 F.2d at 1394, does not affect our analysis in this case. Fretwell does not challenge the authority of the Arkansas capital sentencing scheme. Such a challenge would fail under a retroactive application of Lowenfield. Rather, the question before us is whether Fretwell's trial court, at the time of his trial, would have followed Collins. The retroactive nature of Lowenfield cannot dispositively resolve this question
 
 
 [1]
 I cannot agree that Fretwell would certainly have received a life sentence if his attorney had made a Collins objection and the trial court had not given the pecuniary gain instruction. The jury was instructed on two potential aggravating circumstances. Although it found only one, pecuniary gain, it concluded that the death penalty was appropriate. Thus, if pecuniary gain had not been charged, the jury would have had to change either its finding as to the other aggravating circumstance, or its conclusion as to the death penalty, to avoid an inconsistent sentencing verdict. It is sheer speculation for the majority to predict what decision that jury would have made
 
 
 [2]
 See also Evans v. Thompson, 881 F.2d 117 (4th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 3255, 111 L.Ed.2d 764 (1990); Coleman v. Saffle, 869 F.2d 1377, 1385-1387 (10th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 1835, 108 L.Ed.2d 964 (1990); Hulsey v. Sargent, 821 F.2d 469, 471 (8th Cir.), cert. denied, 484 U.S. 930, 108 S.Ct. 299, 98 L.Ed.2d 258 (1987); United States v. Sager, 743 F.2d 1261 (8th Cir.1984), cert. denied, 469 U.S. 1217, 105 S.Ct. 1196, 84 L.Ed.2d 341 (1985)