**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Ramiro CABELLO, Defendant–Appellant.**

No. 93–1108.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 16, 1993.

Decided Feb. 7, 1994.

Andrew B. Baker, Jr., Ronald J. Kurpiers, Asst. U.S. Attys., Jennifer Sackett (argued), Dyer, IN, for plaintiff-appellee.

Estelle Powell (argued), E. Chicago, IN, for defendant-appellant.

Before POSNER, Chief Judge, and COFFEY, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Ramiro Cabello was convicted of one count of conspiracy to distribute cocaine and two counts of distribution of cocaine in violation of 21 U.S.C. §§ 841(a)(1) & 846. He was sentenced to 400 months of imprisonment. He appeals the conspiracy conviction, contending that the testimony of the two government witnesses was insufficient to link him to the conspiracy. He also challenges his sentence because the amount of cocaine involved in the conspiracy was used to calculate his base offense level.

## I. Background

The Rodriguez–Corral group was a drug alliance that dealt primarily with cocaine. The group would purchase one kilogram at a time, paid for by Gilberto Rodriguez–Corral ("Gilberto"). The "holder" of the one kilogram shipment rotated among selected members of the group. Cabello's sister, Maria Cabello ("Maria"), was Gilberto's live-in girlfriend and a member of the group. She operated a video store which was one of the drug distribution points.

Cabello's girlfriend, Elizabeth Santos, testified that from 1988 through 1990, Cabello was "fronted" cocaine by Maria, receiving the drugs on credit and paying for them after he had made the sales. While the shipment lasted, Santos would accompany Cabello to the video store "on a daily basis" to pick up the drugs. After the day's cocaine sales, Maria would pick up the drug money from Cabello's residence.

Gilberto occasionally was in the store when Santos and Cabello picked up the cocaine, but Santos never saw Cabello get drugs directly from Gilberto. On one occasion, Maria did not have any cocaine when Cabello and Santos came for the daily supply. Shortly after Maria placed a phone call, another member of the group, Jose Rodriguez, arrived and gave Cabello five ounces of cocaine.

On November 7, 1990 Cabello distributed one-eighth of an ounce of cocaine to an undercover officer and during the transaction, he discussed possible future sales with the officer. In the taped conversation, he stated: "I've got everything . . . Whatever you want I get, I got. I've got marijuana, I've got heroin, I've got the. . . ." He also told the officer that "when you are in business, you can't trust nobody." Cabello subsequently distributed another ounce of cocaine to the same officer.

Jesus Adame, a government informant, testified that Gilberto was his cocaine supplier for a time. He had met at least one other member of the Rodriguez–Corral group at Cabello's bar, though no transaction between Adame and the group took place there. After Adame began cooperating with the Drug Enforcement Agency, he bought six ounces of cocaine from Cabello because Gilberto, his regular supplier, did not return his telephone calls. He paid Cabello half of what he owed for the cocaine. Thereafter, he was ap-

proached by Gilberto about the remaining payment. Gilberto told Adame that it was his money. Adame subsequently purchased more drugs from the Rodriguez–Corral group but never directly from Cabello.

The fourteen person Rodriguez–Corral group was charged in a thirty-five count indictment. Ramiro Cabello, Maria Cabello, and Jose Rodriguez were tried together and were all convicted of the conspiracy count. The total amount of cocaine attributable to the conspiracy was approximately 87.75 kilograms. That quantity puts Cabello at the base offense level of 36.

## II. Analysis

Cabello asserts that the testimony of Santos and Adame was insufficient to prove that he joined the conspiracy. The government contends that Cabello waived the sufficiency of evidence challenge on appeal because he failed to make a motion for judgment of acquittal at the close of the government's case or at the close of the evidence. Given that omission, the government argues that the court should review only for a manifest miscarriage of justice.

■ A review of the record shows that although Cabello did not move for acquittal at the end of the government's case, he joined with the other co-defendants' motion for judgment of acquittal at the close of all the evidence.[1] *Cf. United States v. Teague,* 956 F.2d 1427, 1433 (7th Cir.1992) (failure to renew motion for acquittal at the close of trial or within seven days after the verdict constitutes a waiver on appeal of any challenge to the sufficiency of the evidence); Wright, Federal Practice and Procedure: Criminal 2d § 463. Thus, Cabello's sufficiency of the evidence challenge is not waived.

**1.** The relevant portion of the transcript concerning Cabello's joint motion with his two co-defendants is as follows:

[Maria's counsel]: Your honor, I'd like to re-argue my motion for a directed verdict of acquittal on the same basis.

. . . . .

The Court: Mr. Padula [Jose Rodriguez's counsel], you do the same?

## A. Sufficiency of the Evidence

When reviewing for sufficiency of the evidence, this court considers the evidence and accompanying inferences in the light most favorable to the government and reverses only if there is no evidence from which the jury could find guilt beyond a reasonable doubt. *United States v. Goines,* 988 F.2d 750, 758 (7th Cir.1993). This court will not reweigh the evidence or evaluate the credibility of witnesses. *United States v. Dortch,* 5 F.3d 1056, 1065 (7th Cir.1993) (citing *United States v. Maholias,* 985 F.2d 869, 874 (7th Cir.1993)).

"To sustain a conspiracy conviction, the government must provide substantial evidence that a conspiracy existed and that the defendant knowingly agreed to join it." *United States v. Pazos,* 993 F.2d 136, 139 (7th Cir.1993). The government's evidence can be entirely circumstantial. *Id.; United States v. Durrive,* 902 F.2d 1221, 1225 (7th Cir.1990). Because Cabello concedes that a conspiracy existed, the only question is whether he joined that conspiracy given "the evidence of drug transactions presented by the government." *United States v. Townsend,* 924 F.2d 1385, 1390 (7th Cir.1991).

■ Cabello argues that his mere association with or knowledge of the Rodriguez–Corral group is insufficient to establish that he joined the conspiracy. *See United States v. Salazar,* 983 F.2d 778, 781 (7th Cir.1993) ("Evidence of 'mere association with conspirators, knowledge of the conspiracy, and presence during conspiratorial discussions,' without more, will not do the trick") (citing *United States v. Paiz,* 905 F.2d 1014, 1020 (7th Cir.1990), *cert. denied,* 499 U.S. 924, 111 S.Ct. 1319, 113 L.Ed.2d 252 (1991)); *United States v. Lechuga,* 994 F.2d 346, 349–50 (7th Cir.) (en banc) (mere purchase or sale of narcotics is not sufficient evidence to prove that an individual has joined a drug conspira-

Mr. Padula: Judge, I would renew all my motions previously made including the severance.

The Court: Same grounds.

[Cabello's counsel]: I join.

. . . . .

The Court: All motions denied. (Tr. 1060).

cy), *cert. denied,* —— U.S. ——, 114 S.Ct. 482, 126 L.Ed.2d 433 (1993).

However, the record reveals sufficient evidence from which the jury reasonably could conclude that Cabello was more than merely associating with the group and that he had more than a buyer-seller relationship. Santos testified that Cabello was "fronted" cocaine by the Rodriguez–Corral group on a highly regular basis. The evidence of repeated "fronted" cocaine transactions alone would support the jury's conclusion that Cabello had knowingly joined the conspiracy. *Dortch,* 5 F.3d at 1070 (evidence of repeated "fronted" cocaine transactions alone could show that defendant had "knowingly thrown his lot in" with the other conspirators). *See also United States v. Saunders,* 973 F.2d 1354, 1360 (7th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1026, 122 L.Ed.2d 171 (1993); *United States v. Blankenship,* 970 F.2d 283, 287 (7th Cir.1992); *United States v. Sergio,* 934 F.2d 875, 879 (7th Cir.1991) (evidence of "fronting" attests to the trust and cooperation that characterized defendant's relationship with members of the conspiracy); *Townsend,* 924 F.2d at 1406 (evidence of "fronting" suggests "a substantial degree of cooperation and partnership rather than a series of isolated and sporadic transactions").

Furthermore, since, the arrangement between Cabello and the Rodriguez–Corral group continued for more than a year, such "prolonged cooperation" supports the inference that Cabello had "join[ed] both mind and hand" with the group to make the scheme possible. *Lechuga,* 994 F.2d at 350 (stating that prolonged cooperation is "one type of evidence of an agreement that goes beyond what is implicit in any consensual undertaking") (citing *Direct Sales Co. v. United States,* 319 U.S. 703, 713, 63 S.Ct. 1265, 1270, 87 L.Ed. 1674 (1943)). *See also Dortch,* 5 F.3d at 1065 (rejecting defendant's "mere buyer-seller" argument where defendant made three "fronted" sales to members of the conspiracy within a four to six month period); *United States v. Edwards,* 945 F.2d 1387, 1397 (7th Cir.1991) (defendant's ongoing relationship with members of the conspiracy is probative of his membership); *Sergio,* 934 F.2d at 879 (same).

Cabello attempts to undermine Santos's testimony by questioning her source of information about the conspiracy. However, Santos testified that her knowledge of the conspiracy was acquired from Cabello and other members of the group. To the extent that Cabello's argument is a challenge to Santos's credibility and the weight of her testimony, it is without merit. It is not the task of the appellate court to reweigh the credibility of witnesses. *United States v. Mojica,* 984 F.2d 1426, 1434–35 (7th Cir.1993).

Cabello asserts that Adame's single transaction with him, made when unable to get drugs from Gilberto, indirectly proves that Cabello was not part of the group. Adame suggested that Gilberto may not have returned his calls because Gilberto may have suspected his cooperation with the Drug Enforcement Agency ("DEA"). Admittedly, an inference could be drawn that if Cabello was a member of the Rodriguez–Corral group, then he would have been warned of Adame's connection with the DEA and would not have sold drugs to Adame.

On the other hand, the fact that Gilberto approached Adame to demand the remaining payment for the six ounces Cabello sold to him could lead the jury to conclude that the group, functioning as a network, had a keen interest in Cabello's distribution progress and success at reselling its cocaine. *Dortch,* 5 F.3d at 1070. The jury could draw the inference that both the Rodriguez–Corral group and Cabello had a "mutual interest in achieving the goal of the conspiracy." *Id.* (citing *Townsend,* 924 F.2d at 1392). While other inferences could also be drawn, on review we consider all inferences in the light most favorable to the government. *Goines,* 988 F.2d at 758.

Finally, two other pieces of evidence support Cabello's conspiracy conviction: first, Cabello's ease in obtaining cocaine from Jose Rodriguez, another member of the conspiracy, and second, the taped conversation between Cabello and the undercover officer in which Cabello stated that he could get any type of drug the officer wanted. The jury could conclude that Cabello's close association with the group gave him access to other levels of the distribution chain as well as all

types of drug that the Rodriguez–Corral group had to offer.[2]

## B.  Calculation of Cabello's Sentence

Relying on his sufficiency of evidence challenge, Cabello contends that the amount of drugs attributable to him should not include the amount involved in the conspiracy, but should be limited to the two ounces attributable to the distribution convictions. As discussed above, Cabello's conspiracy conviction is supported by the evidence. Thus, it was proper for the district court to include the entire amount in calculating Cabello's base offense level. U.S.S.G. § 1B1.3(a)(2). *See Sergio*, 934 F.2d at 878 (for those convicted of conspiring to violate the drug laws, § 1B1.3(a)(2) of the Guidelines makes them criminally responsible for "the total quantity of drugs the conspiracy can reasonably be estimated to have dealt in"). The conviction and sentence of Ramiro Cabello are AFFIRMED.

---

2. The government argues that, in addition to being a distributor or middleman, Cabello was an occasional "holder" of a one-kilogram shipment for the group. The portions of the transcript cited to by the government, however, do not seem to permit such an inference. Even if Cabello was not a "holder," he could still be a member of the conspiracy because "all conspirators need not play the same role in a conspiracy as long as there is 'one overall agreement among various parties to perform different functions in order to carry out the objectives of the conspiracy.'" *Dortch*, 5 F.3d at 1070 (citations omitted).