**Ramiro CABELLO, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**No. 2:94 CV 349 JM.**

United States District Court, N.D. Indiana, Hammond Division.

May 3, 1995.

Ramiro Cabello, Terre Haute, IN, pro se.

Andrew B. Baker, Jr., Jon E. DeGuilio, U.S. Attys. Office, Dyer, IN, for respondent.

### ORDER

MOODY, District Judge.

Ramiro Cabello presents the problem of how to correct a sentence that this court imposed and that Cabello and the government agree is more harsh than called for by the Sentencing Guidelines. The easy solution to this problem would have been direct appeal. What makes Cabello's case difficult is that he has had his appeal and did not at that time raise the present issue. *See United States v. Cabello*, 16 F.3d 179 (7th Cir. 1994). Instead, Cabello now moves for collateral relief pursuant to 28 U.S.C. § 2255. The court here takes up whether § 2255 supports the relief Cabello seeks.

### I.

Cabello was tried before a jury for his involvement in a drug-selling conspiracy. He was convicted of one conspiracy count and two counts of distribution of cocaine, each count carrying a statutory penalty of between 10 years and life imprisonment. *See*

21 U.S.C. § 841(a)(1) & 846. The total amount of cocaine attributable to the conspiracy was 87.75 kilograms. *Cabello,* 16 F.3d at 181. On direct appeal, the Seventh Circuit held that there was sufficient evidence linking Cabello to the conspiracy to support his conviction. *Id.* at 181–83. The Seventh Circuit also affirmed the use of the entire amount of cocaine attributable to the conspiracy to calculate Cabello's base offense level under the Guidelines. *Id.* at 183. So calculated, Cabello's base offense level was 36. *Id.* at 181.[1]

Cabello now challenges the calculation of his criminal history category under the Guidelines. The probation department calculated that Cabello's record justified a criminal history category of III; however, probation concluded, the government argued and the court agreed that Cabello was a career offender. As such, Cabello was assigned a criminal history category of VI. *See* U.S.S.G. § 4B1.1 ("A career offender's criminal history category in every case shall be Category VI.") A Category VI criminal history category combined with a base offense level of 36 yields a sentencing range of 324–405 months in prison. *See* U.S.S.G. Ch. 5, Part A. The court sentenced Cabello to 400 months in prison. Had the court not considered Cabello a career offender, and assigned him a criminal history category of III, the Guideline range for Cabello's sentence would have been 235–293 months in prison. *See id.*

■ On review, it is apparent that the career offender provision was erroneously applied to Cabello. Section 4B1.1 provides that a defendant is a career offender if:

(1) the defendant was at least eighteen years old at the time of the instant offense,

(2) the instant offense of conviction is a felony that is ... a controlled substance offense, and,

(3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

For the purposes of § 4B1.1(3), "a controlled substance offense" is

> an offense under a federal or state law prohibiting the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(2). The court was presented at sentencing with evidence that Cabello had previously been convicted of two purported controlled substance offenses: delivery of a controlled substance and possession of cocaine. These convictions do not support application of § 4B1.1 because the latter is not a "controlled substance offense" under § 4B1.2(2). Specifically, the offense does not involve intent to distribute or dispense a controlled substance. *See United States v. Atkinson,* 979 F.2d 1219, 1222 (7th Cir.1992) (conviction for mere possession insufficient to warrant application of § 4B1.1).

The erroneous application of § 4B1.1 to Cabello resulted in his being sentenced to nearly nine more years in prison than he should have been under the Guidelines. As stated in the beginning of this order, the question is what to do about this given Cabello's failure to raise the error on direct appeal.

## II.

Cabello argues that he is entitled to *habeas* relief under 28 U.S.C. § 2255. After the amendment of FED.R.CRIM.P. 35 and the advent of the Sentencing Guidelines, § 2255 arose as the only option for a federal prisoner who wants a district court to reconsider his or her sentence. *See Scott v. United States,* 997 F.2d 340, 340–41 (7th Cir.1993). As *Scott* warns, however, § 2255 was never intended to be a substitute for the old Rule 35: rather, the terms of § 2255 (unmodified since the new sentencing scheme was put in place) put major limitations on the scope of

---

1. In this regard, the court consults the Guidelines Manual in effect on the date Cabello was sentenced, *i.e.* the 1992 Manual. *See United States v. Korando,* 29 F.3d 1114, 1119 (7th Cir. 1994) (citing U.S.S.G. § 1B1.11). Although the relevant Guidelines sections have not changed substantively since 1992, all citations to the Guidelines in this order are to the 1992 Manual.

available relief. *Id.* The court takes up Cabello's motion in the context of those limitations.

### A.

■ Cabello first asks the court to re-sentence him solely on the basis of the court's misapplication of § 4B1.1. Section 2255 does not support such relief. The statute is limited by its terms to attacks on sentences "imposed in violation of the Constitution or laws of the United States, or ... [where] the court was without jurisdiction to impose such sentence, or ... [where] the sentence was in excess of the maximum authorized by law." 28 U.S.C. § 2255; *see also Bischel v. United States,* 32 F.3d 259, 163 (7th Cir.1994) (§ 2255 "limited to 'an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice.' ") (citation omitted).

Cabello's sentence might have been higher than that called for by the Guidelines, but it was well within the statutory maximum (*i.e.,* life in prison) proscribed for the crimes to which he was convicted. Neither does misapplication of the Guidelines fall within any of the categories for § 2255 relief. *See Scott,* 997 F.2d at 341–43. *Scott* held that: "[a] claim that the judge misapplied the Sentencing Guidelines does not challenge the jurisdiction of the court"; the Guidelines are not "laws" in the sense that their misapplication can support § 2255 relief; and misapplication of the Guidelines does not result in a fundamental miscarriage of justice, as that notion is applied to § 2255 cases. *Id. Scott* reasoned that the Guidelines are not "a Bill of Rights for criminals" and that "[o]ne full and fair opportunity to make arguments under the Guidelines—at sentencing and on direct appeal—is enough." *Id.* at 342.

**2.** Prisoners may also avoid procedural default by showing that their incarceration is fundamentally unjust, *e.g.* that they are actually innocent. *See Barnhill v. Flannigan,* 42 F.3d 1074, 1078 n. 6 (7th Cir.1994); *Rodriguez v. Young,* 906 F.2d 1153, 1159 (7th Cir.1990). *Barnhill* and *Rodriguez,* like *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), which introduced the cause-and-prejudice standard to *habeas* cases, involved a state prisoner moving under

Cabello did not raise the § 4B1.1 issue at sentencing or on direct appeal. He cannot, therefore, do so directly under § 2255.

### B.

■ To avoid this being the end of the matter, Cabello adds a second ground for § 2255 relief: that his lawyer was ineffective for not objecting at sentencing to the application of § 4B1.1. Cabello maintains that this failure violated his Sixth Amendment right to counsel. *See Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984) (" '[T]he right to counsel is the right to the effective assistance of counsel.' ") (citation omitted). Cabello thereby raises a constitutional, § 2255–cognizable issue. He also raises the specter of procedural default.

#### 1. *Procedural default.*

■ The preference in our criminal justice system is to resolve legal error on direct appeal. Failure to raise an issue on direct appeal constitutes procedural default, and bars collateral litigation of the issue under § 2255 unless the prisoner can show "cause" for the default, plus "prejudice" resulting from it. *See Belford v. United States,* 975 F.2d 310, 313 (7th Cir.1992); *but see Castellanos v. United States,* 26 F.3d 717, 719–20 (7th Cir.1994) (varying the test where counsel ignores defendant's request to file an appeal).[2]

■ Regarding cause, Cabello alleges ineffective appellate counsel. Ineffective counsel is counsel whose: (1) subpar performance, (2) prejudiced the defendant. *See Castellanos,* 26 F.3d at 718 (citing *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064). The same lawyer represented Cabello at trial, sentencing and appeal. Cabello argues that if she had been

§ 2254. The same standards apply to federal prisoners moving for relief under § 2255. *See Belford,* 975 F.2d at 313 n. 2. Cabello does not argue "fundamental injustice" here, and the court would not grant relief from his default on this ground. Cabello was convicted by a jury, his conviction was upheld on appeal and Cabello received a sentence well within the statutory maximum. Neither is there evidence of Cabello's actual innocence.

competent, she would have raised on appeal her ineffective representation at sentencing.

Cabello's argument is a good one. Ineffective appellate counsel is the most commonly successful excuse for procedural default. *See Rodriguez v. Young,* 906 F.2d 1153, 1159 (7th Cir.1990). Moreover, because of the conflict of interest inherent in expecting a lawyer to attack on appeal his or her own trial work, the case is particularly strong where trial and appellate counsel are the same. *See Barnhill v. Flannigan,* 42 F.3d 1074, 1077–78 (7th Cir.1994); *Riner v. Owens,* 764 F.2d 1253, 1257 (7th Cir.1985) ("[I]t would be most difficult if not professionally awkward to require a lawyer to argue on appeal his [or her] own ineffectiveness.") Accordingly, "identity of trial and appellate counsel can constitute sufficient cause to meet the first element of the cause and prejudice standard." *See id.; see also Strickland,* 466 U.S. at 692, 104 S.Ct. at 2067 (1984) (for ineffective-assistance purposes, "prejudice is presumed when counsel is burdened by an actual conflict of interest.") Cabello thus establishes ineffective appellate counsel, and thereby cause for not raising on appeal the ineffective assistance of his lawyer at sentencing. Cabello must, nonetheless, still show prejudice from that omission. *See Riner,* 764 F.2d at 1257 (citing *Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977)).

The analysis becomes obtuse at this point because prisoners like Cabello are expected to clear three different "prejudice" hurdles. First, there is "prejudice" as required to show ineffective appellate counsel, and therefore cause for default. Second, there is "prejudice" as required to satisfy the second prong of the cause-and-prejudice test, *i.e.,* to proceed despite a default for which cause has been shown. Finally, where the underlying § 2255 petition alleges ineffective assistance of trial counsel, there is "prejudice" as required to prove up that allegation. The Seventh Circuit has several times raised, but left open, the question of whether "prejudice" in the ineffective-assistance sense (as required to clear the first and third hurdles)

means the same thing as "prejudice" in the cause-and-prejudice sense (as required to clear the second hurdle). *See, e.g., Belford,* 975 F.2d at 314; *Freeman v. Lane,* 962 F.2d 1252, 1259 n. 5 (7th Cir.1992); *Rodriguez,* 906 F.2d at 1159. This court now concludes that if "prejudice" does have distinct meanings in these contexts, the distinction is one without a difference.

The reason for this conclusion is that the first two hurdles collapse, analytically, with the third. In the typical case where ineffective appellate counsel is asserted as cause for procedural default, the prejudice required to establish that ineffectiveness merges with the prejudice required to satisfy the second cause-and-prejudice prong: appellate counsel is constitutionally ineffective only if he or she fails to raise a claim on appeal from which "there is a 'reasonable probability' that if the petitioner had appealed he would have won." *See Belford,* 975 F.2d at 314 (stating test for second cause-and-prejudice prong). Whether, in turn, there was such a probability of successful appeal "require[s] the petitioner to address the merits of the claims in his section 2255 motion." *Id.* Thus, at least where the § 2255 claim involves allegedly ineffective trial counsel, ineffective-assistance type "prejudice" from (and/or subpar performance by) trial counsel becomes the end-all of the analysis. This does not change where, as here, the first "prejudice" hurdle is presumed cleared due to a lawyer's conflict of interest.

That said, the court turns to the merits of Cabello's argument that his counsel was ineffective at sentencing.

#### 2. *The merits.*

Cabello's attorney was, indeed, ineffective. As discussed above, § 4B1.1 was erroneously applied to Cabello because one of the prior convictions supporting its application did not fall within the Guideline definition of a "controlled substance offense." Notwithstanding the clear law on this point, trial counsel failed to object to the application of § 4B1.1. This was subpar representation.[3] Moreover, this failure materially

---

**3.** Neither could counsel have thought the court would imply intent to distribute from the amount

prejudiced Cabello. Had his attorney objected to the application of § 4B1.1, Cabello's sentence would, under the Guidelines, have involved at least 8 years and 11 months less prison time. Such a "significantly less harsh" sentence constitutes the sort of prejudice that supports a Sixth Amendment ineffective-assistance claim based on failure to assure the proper Guideline sentence. *See Durrive v. United States,* 4 F.3d 548, 551 (7th Cir.1993) (setting out standard for ineffective-assistance claims based on counsel's error at sentencing); *see also United States v. Partee,* 31 F.3d 529, 534 (7th Cir.1994) (confirming *Durrive* standard where counsel error led to erroneous Guideline sentence). For these reasons, Cabello is entitled to § 2255 relief and procedural default will not stand in his way.

*Conclusion.*

*Durrive* warns against the use of ineffective-assistance claims under § 2255 to "admit through the back door considerations barred at the front." 4 F.3d at 550. As *Durrive* implicitly acknowledges, however, where a Guideline (or other non-constitutional) error results in a significantly more harsh sentence, and trial counsel could and should have prevented that error, then constitutional hackles are raised. This court follows *Durrive* in demurring with regard to what precisely constitutes a "significantly more harsh" sentence. Suffice to say that the nearly 9 years at issue here is sufficiently significant. In such a case, § 2255 does provide the "back door" relief to which *Durrive* alludes.

Accordingly, Cabello's motion for § 2255 relief is **GRANTED**. Cabello is to appear in this court on **JULY 6, 1995 AT 12:00 NOON** for a new sentencing hearing. The Marshall's service is to assure that Cabello will be present at that time. The Clerk is to

promptly appoint Cabello a new lawyer who will represent Cabello at his re-sentencing.

**SO ORDERED.**

---

involved in Cabello's possession conviction. Even if the court could consider that amount, *but see United States v. Lipsey,* 40 F.3d 1200, 1201 (11th Cir.1994) (underlying conduct not considered when deciding what constitutes a § 4B1.1 "controlled substance offense"); *United States v. Wagner,* 994 F.2d 1467, 1474–75 (10th Cir.1993)

(charged offense is only relevant consideration), the 4.24 grams Cabello was convicted of possessing would not, standing alone, support an inference of intent to distribute, etc., *see United States v. Brown,* 7 F.3d 648, 656 (7th Cir.1993) (citing cases where 5.3, 15.5 and 35 grams did not support inference).