Nathaniel SMITH, Petitioner,

v.

UNITED STATES of America, Respondent.

Civ. A. No. 93–00492–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Dec. 7, 1994.

Nathaniel Smith, pro se.

Helen Fahey, U.S. Atty., Thomas W. Dworschak, Asst. U.S. Atty., Alexandria, VA, for respondent.

## MEMORANDUM OPINION

ELLIS, District Judge.

This is an anomalous case. It grows out of an error made in Sentencing Guidelines criminal history calculations that went undetected at the time of petitioner's sentencing. Also undetected at sentencing was a second criminal history issue that, had the government raised it, would have essentially canceled the error missed by petitioner's counsel. Yet petitioner, citing his counsel's constitutionally ineffective assistance, now seeks § 2255 relief [1] through resentencing. Because the Sentencing Guidelines have changed since petitioner's sentencing, and because the Guidelines in effect at the time of the resentencing govern, petitioner now faces significantly lower sentencing ranges if resentenced. Thus, the anomaly presented is that the mere passage of time has made petitioner

---

1. 28 U.S.C. § 2255.

the windfall beneficiary of non-retroactive Guidelines changes from which he would not have benefitted had his counsel not overlooked the erroneous criminal history calculation at sentencing or, alternatively, had the error been timely detected and remedied. However odd the result, petitioner has demonstrated proper grounds for § 2255 relief, and is therefore entitled to resentencing.

## I.

On October 16, 1990, a federal grand jury indicted petitioner, Sharon S. Carnegie, and Gary Barbee for their involvement in a drug trafficking conspiracy operating in northern Virginia. While the conspiracy began in late Summer 1987, petitioner did not participate until July 1989, at which time he began to work as a "runner" for Carnegie. Petitioner was charged under six of the indictment's sixteen counts. On March 18, 1991, in return for dismissal of five counts, petitioner pled guilty to conspiracy to distribute cocaine and crack cocaine in violation of 21 U.S.C. § 841(a)(1). Petitioner also signed a statement of facts admitting that he and his co-conspirators distributed approximately thirteen kilograms of crack cocaine during the period of his involvement in the conspiracy. At sentencing on May 24, 1991, petitioner, by counsel, informed the Court[2] that petitioner had no objection to the contents of the Pre-Sentence Report (PSR). He also requested a downward departure pursuant to U.S.S.G. § 5K2.0, based on his efforts to treat his drug addiction, which the Court denied. The Court sentenced petitioner to 292 months incarceration, the bottom of the applicable Sentencing Guidelines range of 292 to 365 months. On May 22, 1992, the Court denied the motion of petitioner's counsel, pursuant to Rule 35, Fed.R.Crim.P., for a reduction in sentence based upon the government's failure to make a substantial assistance motion.

Petitioner appealed his sentence on the grounds that (i) the government breached his plea agreement by failing to investigate information he provided and consequently refusing to file a Rule 35 motion, and (ii) petitioner's sentence was unconstitutionally disparate from that of a co-defendant. The court of appeals ruled against petitioner on each issue, and affirmed the conviction and sentence. *United States v. Smith,* 981 F.2d 1252 (4th Cir.1992) (unpublished).

Petitioner presents two principal § 2255 claims, namely that, under the Sentencing Guidelines then in effect, (i) he was sentenced at an improper base offense level, and (ii) he was sentenced in an improper criminal history category. Petitioner presents other claims that are derived from these alleged errors. Specifically, he contends that his counsel was constitutionally ineffective for not objecting to these errors, and that his guilty plea was involuntary because he expected to be sentenced correctly. While petitioner's sentence was based on an appropriate base offense level, his criminal history score was improperly determined, and petitioner is therefore entitled to relief.

## II.

First, petitioner claims that his sentence was computed with an improper base offense level. The level used, 40,[3] was appropriate under the Sentencing Guidelines then in effect, for an offense involving five to fifteen kilograms of crack cocaine. *See* U.S.S.G. § 2D1.1. As petitioner accurately asserts, there is no evidence that he personally handled crack cocaine in an amount approaching five kilograms. Nonetheless, at sentencing, petitioner was held accountable for the full quantity of drugs, thirteen kilograms, that were trafficked by the conspiracy during the period from July 1989 to August 1990, the period during which he was active in the conspiracy.

 Petitioner correctly asserts that he cannot properly be held responsible for all of the conspiracy's drug trafficking activities, but only for those activities within the scope of his agreement to participate, in other words, those which were "reasonably foreseeable" to him. U.S.S.G. § 1B1.3(a)(1); *United*

---

**2.** Petitioner was sentenced by another judge of this division. His resentencing pursuant to the instant petition will be before the same judge.

**3.** Because petitioner was awarded a two level credit for acceptance of responsibility, U.S.S.G. § 3E1.1, his final, adjusted offense level was 38.

States v. *Willard,* 909 F.2d 780, 781 (4th Cir.1990); *United States v. Vinson,* 886 F.2d 740 (4th Cir.1989), *cert. denied,* 493 U.S. 1062, 110 S.Ct. 878, 107 L.Ed.2d 961 (1990); *cf. United States v. O'Campo,* 973 F.2d 1015, 1025 (1st Cir.1992) (requiring more crystallized knowledge when defendant's sentence is based in part on drug transactions *prior* to his entry into conspiracy). Measured against this standard, petitioner's contention fails, for the record amply supports the conclusion that petitioner reasonably should have foreseen that the conspiracy trafficked in well over five kilograms of crack cocaine during the period of his participation. Thus, petitioner knew that the conspiracy was active and extensive. In a signed statement dated May 29, 1991, he identified ten other drug dealers, eight of whom he described as working for his co-conspirator, Sharon Carnegie. In a debriefing with federal agents on February 25, 1992, petitioner provided enough information on names, dates, and amounts of drugs distributed by his co-conspirators to fill six pages of agents' notes. In addition, in connection with his plea agreement, petitioner signed a statement of facts indicating that the conspiracy distributed approximately thirteen kilograms during the period of his involvement.[4] This admission, together with petitioner's admitted involvement in the undeniably extensive conspiracy, leaves no question that petitioner should reasonably have foreseen that the conspiracy was responsible for the distribution of at least five kilograms of crack cocaine.[5]

4. Petitioner's plea agreement also contains a paragraph setting forth sentencing ranges that the government believed, but did not promise, would apply. The paragraph presents ranges that petitioner would receive, depending on his criminal history category, if sentenced with a total, adjusted offense level of 38. Since this is the offense level eventually applied to petitioner, it is clear that he did not plead guilty in ignorance of the amount of drugs that would be attributed to him at sentencing.

5. Petitioner's resentencing under the current Sentencing Guidelines, as described below, largely moots petitioner's objection to the amount of drugs attributed to him. Under the current Sentencing Guidelines drug quantity table, the highest offense level, 38, is for offenses involving 1.5 kilograms or more of cocaine base.

Petitioner emphasizes the fact that he had only a limited and subordinate role in the drug operation, acting only as a courier at Carnegie's direction. He alleges he had no specific knowledge of particular drug transactions conducted by others in the conspiracy, and that he did not know the frequency of such transactions or the quantities involved. This does not effectively refute the conclusion that the transactions were foreseeable to him. To say that petitioner, who repeatedly and knowingly participated in the distribution of crack cocaine through the conspiracy, could have foreseen drug transactions in which he was not personally involved, is not, as petitioner asserts, "akin to holding the Pope accountable for the overpopulation in the world."[6] Contrary to his assertions, petitioner was sentenced with a proper base offense level.

### III.

Second, petitioner claims that he was assigned an improper criminal history level, category III. In the PSR, petitioner received a total of four criminal history points, one for each of four convictions, namely (i) defrauding an innkeeper, (ii) driving while intoxicated, (iii) making a false report to a police officer, and (iv) breaking and entering and resisting arrest. He contends that the first three were misdemeanor convictions that should have been excluded pursuant to U.S.S.G. § 4A1.2(c). The Sentencing Guidelines provide that sentences for misdemeanor offenses are not counted if (i) the sentence was a term of probation less than one year or

U.S.S.G. § 2D1.1. Since petitioner certainly and reasonably should have foreseen the conspiracy's distribution of at least 5 kilograms of crack cocaine, *a fortiori,* he should have foreseen a lesser amount, 1.5 kilograms.

6. This analogy is plainly inapposite. Petitioner's participation in the crack cocaine conspiracy is in no way comparable to the Pope's role as the spiritual head of a church. Advocating a ban on birth control is hardly in the same league as participating in the distribution of a poison, namely crack cocaine. Furthermore, unlike the tenuous connection between the Pope and overpopulation, there is a clear and direct connection between defendant's conspiratorial conduct and knowledge, on the one hand, and the extent of the conspiracy's drug distribution activities, on the other.

imprisonment less than thirty days, (ii) the misdemeanor offense was not similar to the instant offense, and (iii) the misdemeanor offense is among those listed in U.S.S.G. § 4A1.2(c)(1). In fact, the list in § 4A1.2(c)(1) includes "False information to a police officer," but not petitioner's other misdemeanor offenses, defrauding an innkeeper and driving while intoxicated. Thus, as the government concedes, petitioner did receive one unwarranted criminal history point. But for this error, petitioner would have been in criminal history category II, rather than III, resulting in a sentencing range, given the guidelines then in effect, of 262 to 327 months, rather than the range of 292 to 365 months that was actually used.

Petitioner did not raise this objection at his sentencing hearing or in his direct appeal. Such a failure ordinarily constitutes a procedural default barring collateral review by § 2255 motion, unless "cause and prejudice" are shown. *See United States v. Frady*, 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *United States v. Maybeck*, 23 F.3d 888 (4th Cir.1994). As to the first of these requirements, petitioner has shown ample cause for not raising this claim earlier, namely that he received constitutionally ineffective assistance of counsel. Where a defendant receives ineffective assistance, it is well settled that the claim is properly raised by § 2255 motion rather than on direct appeal.[7]

In order to establish that his counsel's error violated his Sixth Amendment right to effective counsel, petitioner must show that (i) his attorney's performance was, under all circumstances, unreasonable under prevailing professional norms, and (ii) there is a reasonable possibility that, but for counsel's errors, a different result would have obtained. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The performance of petitioner's counsel was objectively unreason-

able.[8] There was no ambiguity about whether petitioner's misdemeanor conviction for the false police report was excludable under § 4A1.2(c). While courts are properly deferential to attorneys' discretion, failure to raise an objection to a clear and indisputable error in the PSR is not within the broad range of performance that can be deemed reasonable. *See United States v. Beatty*, 35 F.3d 557, 1994 WL 481912 (4th Cir. Sept. 7, 1994) (unpublished opinion) (finding *Strickland* violation where attorney failed to file written objections to presentence report); *United States v. Peak*, 992 F.2d 39 (4th Cir.1993) (finding *Strickland* violation were attorney failed to file notice of appeal); *United States v. Hanger*, 991 F.2d 791, 1993 WL 128015 (4th Cir.1993) (unpublished opinion) (finding *Strickland* violation where attorney failed, as defendant requested, to object to errors in presentence report).

Given these conclusions, two separate but related questions remain. The first, under *Strickland*, is whether petitioner was prejudiced by his counsel's error, that is, whether petitioner would have received a lower sentence had his counsel raised the appropriate objection to the PSR's criminal history calculation. The defendant must show "a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. A reasonable probability is one "sufficient to undermine confidence in the outcome." *Id.* The second question, under *Frady*, is essentially identical, that is, whether petitioner suffered " 'actual prejudice' from the errors of which he complains." *See* 456 U.S. at 168, 102 S.Ct. at 1594. Thus, *Frady* and *Strickland* present the same question, whether petitioner was prejudiced by his counsel's error, though it is not clear that the standards for finding prejudice are identical under the

---

7. *See, e.g., United States v. Williams*, 977 F.2d 866, 871 (4th Cir.1992), *cert. denied*, — U.S. ——, 113 S.Ct. 1342, 122 L.Ed.2d 725 (1993); *United States v. Aulet*, 618 F.2d 182 (2d Cir. 1980); *Thor v. United States*, 574 F.2d 215 (5th Cir.1978); *United States v. Thompson*, 972 F.2d 201 (8th Cir.1992); *United States v. Kay*, 961 F.2d 1505 (10th Cir.1992).

8. The error was an innocent inadvertence, and not indicative of the entirety of counsel's representation of petitioner, which was competent and effective in all other respects.

two.[9] Regardless of whether these standards are different, both are clearly satisfied here.

It is clear that petitioner was prejudiced within *Strickland* and *Frady*'s meaning, for in all probability, had his counsel not erred, he would have received a lower sentence. Since the criminal history calculation was clearly incorrect under § 4A1.2(c), it must be assumed that an appropriate correction would have been made had petitioner's counsel raised the objection. In that event, petitioner would have been sentenced at offense level 38 and criminal history category II, with a sentencing range of 262 to 327 months. Given that the sentencing court originally chose the bottom of the guidelines range, it is likely that petitioner would have received a sentence lower. than the 292 month sentence imposed. This analysis assumes, of course, that the sentencing proceeding would have been otherwise unaffected. For example, it assumes that the government would not have raised additional objections or enhancements. Such assumptions are proper because the relevant question is what would have occurred "but for" the ineffective assistance. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068; *see Frady,* 456 U.S. at 168, 102 S.Ct. at 1594–95. The government cannot refute the conclusion that petitioner was prejudiced by his counsel's error by claiming that there were arguments available that the government could have, but did not, raise against petitioner at his sentencing.[10] Thus, petitioner has demonstrated a substantial likelihood that his counsel's ineffective performance prejudiced the outcome of his sentencing. Having received ineffective assistance of counsel in violation of the Sixth Amendment, and having demonstrated cause and prejudice for his failure to appeal on this ground, petitioner is entitled to *habeas* relief.

Of course, the conclusion that petitioner has access to certain remedies does not necessarily mean that those remedies will benefit him. In this case, the government argues that the appropriate remedy is resentencing, and that this remedy will yield petitioner no benefit. Such an argument cannot defeat petitioner's entitlement to the remedy, though it might render his petition, for practical purposes, moot. In fact, contrary to the government's assertions, it is likely in this case that resentencing will benefit petitioner.

■ Resentencing, if it occurs, must be governed by the Sentencing Guidelines in effect on the date of resentencing, unless this would result in a harsher sentence and *ex post facto* violation. U.S.S.G. § 1B1.11; *United States v. Clark,* 8 F.3d 839, 844 (D.C.Cir.1993); *United States v. Fagan,* 996 F.2d 1009, 1018 (9th Cir.1993); *United States v. Ekhator,* 853 F.Supp. 630, 636 (E.D.N.Y. 1994). The government points out that a defendant is to be given two additional criminal history points if he committed the instant offense while under any criminal justice sentence. U.S.S.G. § 4A1.1(d).[11] Petitioner did not receive additional points under this section at the original sentencing. Since then, amendment 381 to the Sentencing Guidelines, effective November 1, 1991, clarified that the provision also applies where the defendant was on unsupervised probation. U.S.S.G. § 4A1.1(d), commentary n. 4.[12] On Decem-

---

9. Several courts have recognized this to be an open question. *See Freeman v. Lane,* 962 F.2d 1252 (7th Cir.1992); *Rodriguez v. Young,* 906 F.2d 1153 (7th Cir.1990). Others have simply treated the two as involving identical standards. *See Deutscher v. Whitley,* 884 F.2d 1152, 1156 (9th Cir.1989); *Cook v. Lynaugh,* 821 F.2d 1072, 1079 (5th Cir.1987).

10. It is therefore irrelevant to the *Strickland* and *Frady* prejudice analysis whether petitioner would have received two additional criminal history points pursuant to Sentencing Guidelines § 4A1.1(d), had the government raised the issue. *See infra* notes 11–12 and accompanying text. Even though such arguments are available to the government at resentencing, they cannot demon-

strate that petitioner's erroneous criminal history score was harmless error.

11. This is true of the Sentencing Guidelines today and on the date of petitioner's sentencing.

12. The guideline itself, now and at the time of petitioner's sentencing, provides for the addition when "the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." U.S.S.G. § 4A1.1(d). Thus, prior to the addition of the commentary note in November 1991, it was arguably unclear whether § 4A1.1(d)'s two point enhancement applied to unsupervised probation.

ber 5, 1990, petitioner was sentenced to a term of three years unsupervised probation for breaking and entering and resisting arrest. Since petitioner participated in the cocaine distribution conspiracy from July 1989 to August 1990, petitioner committed a substantial portion of the offense conduct while on probation. If resentenced, therefore, petitioner would likely receive two additional criminal history points pursuant to U.S.S.G. § 4A1.1(d). In sum, the government argues, after reducing petitioner's criminal history score by one point to correct the § 4A1.2(c) error, the score would be increased by two points pursuant to § 4A1.1(d), and petitioner would be assigned, as before, to criminal history category III. Although true, this does not win the day for the government.

■ Because of additional changes in the Sentencing Guidelines since petitioner's sentencing in May 1991, there is a substantial likelihood that petitioner will benefit if resentenced under the current Sentencing Guidelines even if he remains in criminal history category III. Thus, petitioner was sentenced with a base offense level was 40, reduced to 38 by a two point reduction for acceptance of responsibility. U.S.S.G. § 3E1.1. The drug quantity table in § 2D1.1 of the Sentencing Guidelines has been changed since petitioner's sentencing. The highest offense level is now 38, for offenses involving 1.5 kilograms or more of crack cocaine. In addition, at the time of petitioner's sentencing, the Sentencing Guidelines allowed only a two point reduction in base offense level for acceptance of responsibility, which petitioner received. U.S.S.G. § 3E1.1. Amendment number 459 to § 3E1.1, effective November 1, 1992, allows a three point reduction in certain cases. Petitioner claims

that he qualifies for the three point reduction. There may well be additional changes to the Sentencing Guidelines that affect petitioner. It is solely the task of the resentencing court to apply these provisions, to determine the appropriate sentencing range, and to select a sentence within or outside the range. At present, the only question is whether there exists a realistic possibility that petitioner will benefit from resentencing. Contrary to the government's view, it is apparent that there is such a possibility; petitioner is likely to benefit from being resentenced under the current guidelines.

Finally, the government, and the analysis thus far in this opinion, has assumed that the appropriate relief here is vacation of petitioner's existing sentence, followed by resentencing. If so, an anomalous result is possible, for on resentencing, petitioner is likely to obtain a sentence that is not only lower than his present sentence, but lower than he would have received if his counsel had been effective. Had his counsel spotted the criminal history error, the proper sentencing range would have been 262 to 327 months. But now, if petitioner is resentenced, the applicable guidelines range may be significantly lower.

The text of the *habeas* statute provides some suggestion that vacation and resentencing is not the sole remedy when a district court upholds an objection to a sentencing proceeding, as it provides that the court may "vacate, set aside or *correct* the sentence." 28 U.S.C. § 2255 (emphasis added). If the inclusion of the word "correct" in § 2255 is not surplusage, it suggests that courts have the power to modify petitioner's existing sentence, as opposed to vacating the sentence and imposing a new one.[13] In any event, it is

---

**13.** This is apparently consistent with statutorily prescribed procedure when a defendant successfully challenges his sentencing by direct appeal. The relevant statute, 18 U.S.C. § 3742(f), draws a distinction between (i) situations where the court of appeals finds the Sentencing Guidelines were applied incorrectly, yielding an improper sentencing range, and (ii) situations where the sentence imposed was outside the guidelines' range and found to be unreasonable. In the former situation, the statute instructs the court of appeals to "remand for further sentencing proceedings." 18 U.S.C. § 3742(f)(1). In the latter situation, the statute instructs the court of appeals to "set aside the sentence and remand the case for further sentencing proceedings." 18 U.S.C. § 3742(f)(2). This distinction arguably authorizes the court of appeals, in cases of the first type, to direct the district court to correct a sentence without vacating and resentencing. *See United States v. Ekhator*, 853 F.Supp. 630, 636 (E.D.N.Y.1994); *cf. United States v. Lipper*, 10 F.3d 808, 1993 WL 470270 (9th Cir.1993) (unpublished opinion) (finding court of appeals may order "technical correction" of sentence without remanding for vacation and resentencing).

unnecessary for the Court to resolve this novel question of § 2255 procedure, for the government in this case has conceded that resentencing is the appropriate relief.[14]

Accordingly, the Court orders that petitioner's motion to vacate, set aside, or correct his sentence, pursuant to § 2255, is granted, and petitioner will be resentenced.

---

**14.** This relief also disposes of petitioner's claim that his guilty plea was not entered knowingly and intelligently. Fed.R.Crim.P. 11. To warrant relief in a § 2255 proceeding, the facts must establish that the plea was involuntary to such a degree that the defect results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure.

*United States v. Timmreck,* 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979). Petitioner claims that his plea was involuntary because he expected to be sentenced correctly. Because the only proven error in petitioner's sentencing, the criminal history score, will be corrected by resentencing, there remains no basis for invalidating the plea.