**UNITED STATES of America, Plaintiff,**

v.

**Chong Won TAI, Defendant.**

**Nos. 97 C 1830, 91 CR 752.**

United States District Court,
N.D. Illinois,
Eastern Division.

June 19, 1997.

Canella Elizabeth Henrichs, U.S. Attorney's Office, Chicago, IL, for U.S.

Chong Won Tai, Sandstone, MN, pro se.

## MEMORANDUM OPINION AND ORDER

ASPEN, Chief Judge:

In April 1992, petitioner Chong Won Tai was convicted of three counts of extortionate extension of credit in violation of 18 U.S.C. § 894. On direct appeal, the Seventh Circuit affirmed Tai's conviction, *see United States v. Tai,* 994 F.2d 1204, 1214 (7th Cir.1993), but twice partially vacated Tai's sentence and remanded the case to us for further proceedings, *see id.; United States v. Tai,* 41 F.3d 1170, 1178 (7th Cir.1994); *see also United States v. Tai,* 66 F.3d 328 (7th Cir.1995) (table) (affirming the modified sentence).[1] Tai now asks us to vacate his conviction or modify his sentence pursuant to 28 U.S.C. § 2255. For the reasons set forth below, the petition is denied.

### I. Commerce Clause

Tai's first argument is that his convictions should be vacated because the statute under which he was convicted, 18 U.S.C. § 894, is unconstitutional. *See* Pet.'s Br. at 2. Specifically, he contends that Congress exceeded the scope of its power under the Commerce Clause in prohibiting all extortionate extensions of credit, even those with no particular connection to interstate commerce. Tai acknowledges that this precise argument was squarely rejected by the Supreme Court in *Perez v. United States,* 402 U.S. 146, 154–55, 91 S.Ct. 1357, 1361–62, 28 L.Ed.2d 686 (1971), but he argues that *Perez* has been implicitly overruled by *United States v. Lopez,* 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). We find this argument unpersuasive. *Lopez* struck down the Gun–Free School Zones Act of 1990, 18 U.S.C. § 922(q)(1)(A), on the grounds that

---

1. Since each of these appellate opinions provides the general background facts of this case, we will assume readers' familiarity with the facts and need not repeat them in this opinion.

there was no connection between the possession of firearms in school zones and interstate commerce. *See id.* at 551–53, 115 S.Ct. at 1626. Although the impact of this holding on the scope of Congress's commerce power is the subject of much discussion in scholarly circles, *see, e.g.,* Symposium, *Reflections on United States v. Lopez,* 94 MICH. L. REV. 533 (1995), as well as the courts,[2] it is quite clear that *Lopez* has not disturbed the Court's holding in *Perez.* To the contrary, the *Lopez* majority cites *Perez* with approval, using it as an example of how Congress has the power to regulate purely intrastate activities that "substantially affect" interstate commerce. *See Lopez,* 514 U.S. at 559–61, 115 S.Ct. at 1630; *United States v. Bishop,* 66 F.3d 569, 585 n. 25 (3d Cir.1995) (noting that *Perez* was "cited approvingly and relied upon throughout *Lopez*"). *Perez* thus remains good law, and Tai's first argument must be rejected.

## II.  Wharton's Rule

▮▮▮ Tai next contends that the conspiracy counts of his conviction for extortionate extension of credit should be vacated under Wharton's Rule. This argument is entirely without merit. Wharton's Rule provides that an agreement between two people to commit a crime cannot be prosecuted as a conspiracy where the substantive crime inherently requires the participation of two persons for its commission. *See Iannelli v. United States,* 420 U.S. 770, 781–82, 95 S.Ct. 1284, 1291–92, 43 L.Ed.2d 616 (1975); *United States v. Morris,* 957 F.2d 1391, 1403 (7th Cir.1992). Classic examples of crimes covered by Wharton's Rule include adultery and dueling. Extortion, by contrast, can be committed by a single person acting alone. Since the cooperation of other parties is not inherent in the crime of extortion, when such cooperation occurs it may be prosecuted as a conspiracy.

## III.  Effective Assistance of Counsel at Sentencing

Tai's final argument is that ineffective assistance of counsel at sentencing resulted in his placement in a higher criminal history category than he deserved. Before Tai's initial sentencing hearing, the government urged this court to depart upward in calculating Tai's criminal history category because his presumptive category would "'not adequately reflect the seriousness of [his] past criminal conduct or the likelihood that [he would] commit other crimes.'" Government's Sentencing Mem. at 8 (quoting U.S.S.G. § 4A1.3). The basis for the government's request was its belief that Tai, while confined in the MCC pending trial and sentencing, had continued to engage in extortionate behavior. *See* U.S.S.G. § 4A1.3(e) (permitting an upward departure in criminal history category if the defendant has engaged in "similar adult criminal conduct not resulting in a criminal conviction"). At the sentencing hearing, the government provided evidence of Tai's continuing extortion, *see* Sentencing Tr. at 86–104, and persuaded this court to move Tai from criminal history category I to criminal history category III, *see id.* at 127. The Seventh Circuit later affirmed this upward shift. *See United States v. Tai,* 66 F.3d 328 (7th Cir.1995) (table) (unpublished order dismissing appeal available at 1995 WL 551933).

In the context of this § 2255 petition, Tai is foreclosed from arguing that our decision to depart upward was erroneous. *See Scott v. United States,* 997 F.2d 340, 342 (7th Cir.1993). Apparently aware of this constraint, Tai launches a more roundabout attack on the departure, contending that his attorneys at sentencing did not provide an adequate challenge to the government's evidence of his continuing extortionate activities during his stay at the MCC. In particular, Tai focuses on the fact that his attorneys failed to call as witnesses two of the parties who were allegedly extorted, Lee Chin–Suk and Shin Chang–Sik. Tai contends that these individuals would have testified that he never attempted to extort money from

---

**2.**  Tai's brief refers us to several of these cases, such as *United States v. Denalli,* 73 F.3d 328, 329–31 (11th Cir.1996), which held that in light of *Lopez,* prosecutions under the federal arson statute, 18 U.S.C. § 844(i), must include a showing of substantial impact on interstate commerce. We agree with the government that cases discussing *Lopez'* impact on statutes other than § 894 are of limited value—each statute requires individual consideration.

them—a claim he bolsters with affidavits to that effect. *See* Pet.'s Br. Ex. D (affidavit of Lee Chin–Suk); Ex. E (affidavit of Shin Chang–Sik).

To establish that he was deprived of the effective assistance of counsel, Tai must demonstrate that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). With respect to the first prong—known as the "performance" prong—the Supreme Court has observed:

> The right to the effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing. When a true adversarial criminal trial has been conducted—even if defense counsel has made demonstrable errors—the kind of testing envisioned by the Sixth Amendment has occurred.

*United States v. Cronic*, 466 U.S. 648, 656, 104 S.Ct. 2039, 2045, 80 L.Ed.2d 657 (1984). The second prong—known as the "prejudice" prong—requires the defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. A defendant asserting a Sixth Amendment claim has "the heavy burden of affirmatively establishing that counsel's performance was constitutionally deficient." *United States ex rel. Simmons v. Gramley*, 915 F.2d 1128, 1133 (7th Cir.1990). We may not second-guess counsel's strategic decisions. *See United States v. Cooke*, 110 F.3d 1288, 1299 (7th Cir.1997).

■ Leaving aside for a moment the quality of sentencing counsel's performance, a threshold question that arises from Tai's allegations is whether a two-category increase in a defendant's criminal history level constitutes a cognizable form of prejudice. The Seventh Circuit has held that small increases in a defendant's sentence do not render the results of the trial "unreliable ... or fundamentally unfair," *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993): to satisfy the prejudice requirement, counsel's ineffectiveness must result in a sentence that is "significantly" more harsh than it would otherwise have been. *See Martin v. United States*, 109 F.3d 1177, 1178 (7th Cir.1996); *Durrive v. United States*, 4 F.3d 548, 551 (7th Cir.1993). In *Martin*, for example, the court held that an erroneous one-category increase in a defendant's criminal history level—equivalent to an increase of two offense levels—was not "significant" and therefore could not constitute prejudice.

■ In this case, Tai claims that the ineffectiveness of his sentencing counsel resulted in a two-category increase in his criminal history level. The only case we can find presenting exactly this set of facts is *United States v. Kissick*, 69 F.3d 1048, 1056 (10th Cir.1995), which held that a two-category increase in criminal history level satisfies the prejudice requirement. Significantly, the Tenth Circuit relied heavily on the Seventh Circuit's reasoning in *Durrive* in reaching this conclusion. In light of *Kissick*, we believe that Tai's two-category increase in criminal history level is "significant," and thus satisfies the prejudice requirement. A different conclusion would require us to adopt an unreasonable interpretation of the word "significant:" if Tai had been placed in category I instead of category III, his sentencing range would have dropped from 135–168 months to 108–135 months. Since the actual sentence imposed on Tai was 150 months, his sentence would have been at least 15 months shorter, and could potentially have been as much as 42 months shorter.[3] An increase of more than 15 months in the length of a prisoner's sentence seems "signif-

---

3. Probably the most useful comparison is between the midpoints of the two sentencing ranges, since our 150–month sentence is roughly at the midpoint of the upper range. If we were

to sentence Tai at the midpoint of the lower range (applicable to category I offenders), his sentence would be 120 months, meaning that the

icant" to us.[4] Thus, Tai has satisfied the prejudice requirement, and we must consider sentencing counsel's performance.

■ At the conclusion of the sentencing hearing, Tai himself was of the view that his attorneys had performed effectively. He stated to this court that: "My lawyers have spoken well in my behalf. I know you will carefully consider what they have said." Sentencing Tr. at 124. With the passage of time, however, Tai has come around to the view that his sentencing attorneys were constitutionally inadequate. We think he was right the first time. Sentencing counsel achieved a number of notable victories for Tai: they persuaded this court to impose a smaller upward departure for "significant injury" than had been proposed by the government, *see id.* at 5–8, and convinced us to completely reject the government's motion for an upward departure based on obstruction of justice, *see id.* at 17–19. They competently cross-examined the government's two witnesses at the hearing. *See id.* at 61–70, 80–83. And although they were ultimately unsuccessful, sentencing counsel made intelligent and persuasive arguments against upward departures in Tai's criminal history category and for his leadership role in the criminal activity. *See id.* at 104–118. Finally, Tai's attorneys twice succeeded in persuading the Seventh Circuit to vacate portions of the sentence imposed by this court. *See Tai,* 41 F.3d 1170 (7th Cir.1994); *Tai,* 994 F.2d 1204 (7th Cir.1993). Tai's sentence was unquestionably subjected to the "cruci-

ble of meaningful adversarial testing" envisioned by *Cronic* and *Strickland.*

■ Even apart from the generally laudable performance of sentencing counsel, we think the specific error alleged by Tai—failure to call two of the people allegedly extorted by Tai from the MCC—has no merit. Culpability for the crime of extortionate extension of credit does not depend on the subjective reactions of the debtors to the threatening statements by the creditor: rather, the government merely must show that the statements made by the creditor were reasonably calculated to induce fear in the debtors. *See United States v. DiSalvo,* 34 F.3d 1204, 1211 (3d Cir.1994); *United States v. Polizzi,* 801 F.2d 1543, 1548 (9th Cir.1986); *United States v. Natale,* 526 F.2d 1160, 1168 (2d Cir.1975); *United States v. Annoreno,* 460 F.2d 1303, 1309 (7th Cir.1972). This judgment can be made from the face of the threatening statements alone. In this case, Tai's allegedly extortionate remarks were recorded and transcribed,[5] and we think it was a reasonable strategy for sentencing counsel simply to argue that the remarks were nonextortionate on their face rather than take a chance on the uncertain—and largely immaterial—testimony of the victims. Another set of attorneys (or even the same attorneys with the benefit of hindsight) might have chosen a different approach, but this does not render sentencing counsel's performance constitutionally inadequate. *Cf. Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065 ("A fair assessment of attorney performance requires that every effort be made to eliminate the

---

prejudice to Tai from the two-category enhancement was approximately 30 months.

4. It is not entirely clear whether the Seventh Circuit would agree with this conclusion: dicta in *Durrive* suggests that even 22 months in prison might not be "significant." *See Durrive,* 4 F.3d at 551. We cannot be certain because there is little guidance available for courts applying *Durrive*'s significance test. Judge Rovner has recently pointed out one important ambiguity: "Does the 'significance' depend on the overall length of the petitioner's term? In other words, would an increase of a year be 'insignificant' for someone serving a ten-year term, but 'significant' for someone serving a two-year term?" *Martin,* 109 F.3d at 1183 (Rovner, J., dissenting from the denial of rehearing en banc). Another notable uncertainty is whether a sentencing court should

focus on changes in offense levels and criminal history categories or simply consider the aggregate change in the possible number of months in prison. *Durrive* might be read as suggesting either approach. As Judge Rovner has observed, these uncertainties leave us uncomfortably free "to grant or deny a reprieve to wrongfully sentenced prisoners according to our own whim." *Id.* at 1184.

5. Since the government presented transcripts of the phone conversations in which Tai allegedly extorted Lee Chin–Suk and Shin Chang–Sik from the MCC, there would be no need for them to explain what was actually said in the conversations. Their primary utility would have been to describe those portions of the taped conversations that the transcribers had found inaudible.

distorting effects of hindsight.…"). Tai's ineffective assistance of counsel claim is therefore denied.

## IV. Conclusion

For the foregoing reasons, Tai's petition for a writ of habeas corpus pursuant to § 2255 is denied. It is so ordered.

